**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

In re:                                           )
                                                 )
Thomas Morris Hackney,                           )        Case No.: 04-06193-BGC-7
                                                 )
                                                 )
              Debtors.                           )

**Memorandum Opinion and Order Denying
Administrative Expense Request**

**I. Background**

AmSouth Bank seeks administrative expense status for some of the expenses it incurred in a prepetition lawsuit against the debtor. That status is of course important in any case because administrative expenses are paid before most other expenses.[1] That status is even more important in a case such as this one where claims have been filed for $82,905,894.58.[2]

The specific matters before the Court are:

1.  <u>Motion For Award Of Administrative Priority On Portion Of Its Claim Related To Fraudulent Conveyance Litigation Expenses</u> filed on November 15, 2005, by F. Scott LeRoy, Attorney For AmSouth Bank, Proceeding No. 252;

2.  <u>Response to Motion of AmSouth Bank for Award of Administrative Priority on that Portion of its Claim Related to Fraudulent Conveyance Litigation</u>

---

[1] The applicable version of section 507 of the Bankruptcy Code reads, "(a) The following expenses and claims have priority in the following order: (1) First, administrative expenses allowed under section 503(b) of this title.... 11 U.S.C. § 507. Section 597 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23, after the instant case was filed. Those amendments were not retroactive.

See also Circuit Judge Phyllis A. Kravitch's opinion in <u>Alabama Surface Mining Commission v. N.P. Mining Co. (In re N.P. Mining Co.)</u>, 963 F.2d 1449 (11th Cir. 1992), which reads in part, "If a claim is accorded administrative-expense priority under section 503(b), that claim is paid in the first level of priority, ahead of, inter alia, the unsecured creditors; no other claim is paid until every administrative-expense claim is paid in full." <u>Id</u>. at 1450.

[2] Those include: unsecured $69,550,744.62; secured $12,337,219.52; and priority $1,017,930.44.

Expenses filed on December 8, 2005, by William Dennis Schilling, attorney for the Trustee, Proceeding No. 276;

3.  Objection Of Avalon Finance, LLC To Motion Of AmSouth Bank For Award Of Administrative Priority filed on December 9, 2005, by Benjamin A. Bornstein, Proceeding No. 277;

4.  Objection To Motion Of AmSouth Bank For Award Of Administrative Priority filed on December 9, 2005, by Harold Ridgeway and Harry McDowell, Parties In Interest, Proceeding No. 278;

5.  Reply of AmSouth Bank to Objections of Avalon Finance, LLC to Motion of AmSouth Bank for Award of Administrative Priority filed on December 13, 2005, by Scott LeRoy, the attorney for AmSouth Bank, Proceeding No. 282;

6.  Statement of Issues filed on January 13, 2006, by Dennis Schilling, Proceeding No. 302;

7.  Statement of Issue filed on January 13, 2006, by Scott LeRoy, Proceeding No. 303;

8.  Memorandum in Support of Avalon Finance, LLC's Objection to AmSouth Bank's Motion for Award of Administrative Priority filed on March 13, 2006, by Benjamin Bornstein, Proceeding No. 319;

9.  Supplemental Brief of AmSouth Bank in Support of Motion for Administrative Priority filed on March 15, 2006, by Scott LeRoy, Proceeding No. 321;

10. Affidavit of Eric Helmers in Support of AmSouth Bank's Motion for Award of Administrative Priority filed on March 15, 2006, by Scott LeRoy, Proceeding No. 322;

11. Reply Brief of Max C. Pope, Trustee to AmSouth's Brief as Regards Motion for Administrative Expense filed on March 29, 2006, by Dennis Schilling, Proceeding No. 330; and

12. Response of AmSouth Bank to Reply Brief of Trustee, Max C. Pope, Opposing Bank's Priority Motion filed on May 1, 2006, by Scott LeRoy, Proceeding No. 343.

A hearing was held on January 17, 2006.  Appearing were: Dennis Schilling, the attorney for the trustee; Jon Dudeck, Bankruptcy Attorney for the Bankruptcy Administrator; Charles R. Johanson, III, the attorney for Harold Ridgeway and Harry

Case 04-06193-BGC7    Doc 347    Filed 09/28/06    Entered 09/28/06 11:40:22    Desc Main
Document      Page 2 of 39

McDowell; Jay Clark, the attorney for First Commercial Bank; Daniel Sparks, the attorney for Citizens Business Credit; Christie Dowling, the attorney for Compass Bank; Dave Evans, the attorney for AmSouth Bank; and Benjamin Bornstein, the attorney for Avalon Finance, LLC.

AmSouth bases its request on section 503(b) of the Bankruptcy Code, 11 U.S.C. § 503(b). Typically, requests under that section seek administrative expense status for postpetition work, not prepetition work like that advanced by AmSouth. Because of that distinction, those at the hearing opposing AmSouth's claim asked the Court to consider the threshold legal issue of whether prepetition expenses could ever be paid as administrative expenses in a Chapter 7 case. AmSouth opposed that request and opposes any consideration of its claim without a full trial on the merits.

In an order entered on February 10, 2006, the Court advised the parties that it would consider the legal threshold issue first.

## II. Issue

The issue is: Are fees and expenses incurred by a creditor in a prepetition prosecution of claims against the then non-debtor entitled to administrative expense priority after that non-debtor files a Chapter 7 bankruptcy case?

## III. Findings of Fact

The facts necessary to decide this issue are not disputed.

AmSouth Bank seeks an allowance of administrative expenses for $508,965.44, the priority part of the claim it filed in this case on November 12, 2004, and amended July 31, 2006. See Claim No. 9. That amount represents professional fees and litigation expenses incurred by the bank in a state court fraudulent conveyance action brought by AmSouth against the debtor and numerous alleged tranferees from the debtor. All of the work represented by the administrative expense claim was performed before the current bankruptcy case was filed. After the debtor filed the pending Chapter 7 petition, the bank's lawsuit was removed to this Court, and the trustee was substituted as the plaintiff on June 1, 2005. The trustee took control of the lawsuit and settled it for about five million dollars. That settlement was approved by this Court on August 11, 2005. See Order Granting Motion to Approve Compromise, Proceeding No. 200.

## IV. Applicable Law

The applicable law is section 503 of the Bankruptcy Code, 11 U.S.C. § 503. The relevant parts read:

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

Case 04-06193-BGC7    Doc 347    Filed 09/28/06    Entered 09/28/06 11:40:22    Desc Main
Document    Page 3 of 39

(b)     After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–

(1)(A)  the actual, necessary costs and expenses of preserving the estate including wages, salaries, or commissions for service rendered after the commencement of the case;–

....

(2)     compensation and reimbursement awarded under section 330(a) of this title;

(3)     the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by–

(A)     a creditor that files a petition under section 303 of this title;

(B)     a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C)     a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D)     a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under Chapter 9 or 11 of this title;

(E)     a custodian superseded under section 543 of this title, and compensation for the services of such custodian;  or

(F)     a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4)     reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable

4

under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant ....

11 U.S.C. § 503.[3]

## V.  Conclusions of Law

Based on the discussion below, this Court concludes that AmSouth's request is due to be denied because: (A) prepetition services cannot support a claim for administrative expense priority; (B) the cases AmSouth cites are distinguishable, are not persuasive, or are not on point, and the cases that rely on section 503(b)(3)(D) are not applicable; (C) "substantial contribution" does not exist in Chapter 7 cases; and (D) section 503(b)(3)(B) does not provide any basis for granting AmSouth's administrative expense request.

## A.  Prepetition services cannot support
## a claim for administrative expense priority.

AmSouth does not seek allowance of administrative expenses under any of the specific subdivisions of subsection (b) of section 503.  Instead, it explicitly relies on the first sentence of 503(b).  Am South contends that when Congress inserted the word "including" in that first sentence, it intended to allow certain expenditures to qualify as administrative expenses, where those expenditures would not otherwise qualify under any of the specific subdivision of subsection (b).[4]  This Court agrees.

Writing for the Court of Appeals for the Eleventh Circuit in Varsity Carpet Services, Inc. v. Richardson (In re Colortex Industries, Inc.), 19 F.3d 1371 (11th Cir. 1994), Circuit Judge R. Lanier Anderson III explained, by analogy to an unrelated section, that Congress did not intend for subsection (b)'s specific categories of administrative expenses to be exhaustive.  Judge Lanier wrote:

---

[3] Section 503 was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23, after the instant case was filed.   Those amendments were not retroactive.  The quoted version of section 503 is the version existing at the time this case was filed.

[4] Such an interest would typically be referred to as an "unlisted" interest.  See the passage quoted below from  Alabama Surface Mining Commission v. N.P. Mining Co. (In re N.P. Mining Co.), 963 F.2d 1449, 1452 (11th Cir. 1992).

Case 04-06193-BGC7   Doc 347   Filed 09/28/06   Entered 09/28/06 11:40:22   Desc Main
Document      Page 5 of 39

It is noteworthy that the right of an administrative claimant to interest is not specifically provided for in 11 U.S.C. § 503(b)(1). Rather, if a right to such postpetition interest is to be found, it must be derived from a broad interpretation of that section's use of the term "including." As is evident from the Code's "Rules of Construction," the use of the word "including" is not intended to be limiting. 11 U.S.C. § 102(3). Thus, by implication, Congress did not intend section 726 to be exhaustive, suggesting that the enumerated category for administrative expenses does not necessarily preclude judicial construction to permit other claims reasonably demonstrated to be "actual, necessary" costs of administration, including interest.

Id. at 1377 (footnote omitted) (citations omitted).

What then must AmSouth prove to establish that its claim should be covered by this general provision?

Factually, AmSouth contends that its claim qualifies under the broad interpretation of "including" because the work its professionals performed, as well as the other expenditures it was required to make in connection with the prepetition lawsuit, enabled the trustee to reach a settlement expeditiously. To support that contention, AmSouth argues that absent its professionals' work, and related expenses, the trustee probably would not have been able to negotiate his settlement, and at the least, could not have accomplished it without investing the time, money, and effort similar to that invested by AmSouth. In addition, AmSouth argues that the prepetition costs and expenses, including professional fees it incurred, "in the prosecution of the fraudulent conveyance claims settled by the trustee... provided a substantial benefit to the estate and... may have been the sole or primary reason why the estate was able to obtain an extraordinary recovery...." Statement of Issue, filed January 13, 2006, Proceeding No. 303. Based on these arguments, AmSouth concludes that its expenses qualify for administrative expense status.

For purposes of the pending matters, this Court accepts the facts in AmSouth's arguments as true; however, the Court must reject the bank's conclusion. While many courts, including the Court of Appeals for the Eleventh Circuit, have recognized as a matter of law that administrative expense status is available without satisfying one of the specific items listed in the subdivisions of subsection 503(b), most of those courts recognize, as a matter of law, that only postpetition expenses, not prepetition expenses, may qualify as administrative expenses.

The per curiam opinion of the Court of Appeals for the Eleventh Circuit in " Tavormina v. Weiner (In re Alchar Hardware Co.), 759 F.2d 867 (11th Cir. 1985)(quoting In re Boogaart of Florida, Inc., 23 B.R. 157 (Bankr. S.D. Fla. 1982)) reads in relevant part:

6

We agree with the trustee that Alchar's electrical utility deposit with a local utility should not have been awarded to Weiner as an administrative expense under 11 U.S.C. § 503(b)(1). The award was improper because "only those obligations of a debtor's estate which arise **post-petition**... are entitled to treatment as administrative expenses." In re Boogaart of Florida, Inc., 23 B.R. 157 (Bankr. S.D. Fla.1982). See also In re Baths International, Inc., 25 B.R. 538 (Bankr. S.D.N.Y.1982); In re Coast Trading Company, 31 B.R. 674 (D. Ore.1983).

Id. at 868-69 (emphasis added).

The same court's opinion in Alabama Surface Mining Commission v. N.P. Mining Co. (In re N.P. Mining Co.), 963 F.2d 1449 (11th Cir. 1992) agrees. Writing for the court, Circuit Judge Phyllis A. Kravitch noted, "Section 503(b) begins with the premise that all the costs to be considered are postpetition and some of them will receive administrative-expense priority." Id. at 1460 (emphasis in original). Judge Kravitch explained that requirement with complete clarity. She wrote:

It is clear from the face of the statute, however, that expenses not explicitly listed in section 503(b) can receive administrative-expense status in one of two ways, either as a nonlisted "actual, necessary" expense of preserving the estate under 503(b)(1)(A) or as a nonlisted administrative expense under 503(b) in general. Either way, there is room in the statute for courts to accord administrative-expense priority to postpetition expenses, and courts have given this status to certain categories of postpetition claims that are not explicitly listed in the statute.

Id. at 1452 (emphasis added).

Based on the above, this Court concludes that to qualify for "administrative expense" status under section 503(b), "either as a nonlisted 'actual, necessary' expense of preserving the estate under 503(b)(1)(A) or as a "nonlisted administrative expense under 503(b) in general...," an expenditure must have occurred, or an obligation must have been incurred, postpetition.

Many reported decisions agree with the basis of this Court's conclusion.[5] Those include:

Boeing North American, Inc. v. Ybarra (In re Ybarra), 424 F.3d 1018, 1025-1026 (9th Cir. 2005)("Thus, under the Code, only claims arising from post-petition

_____

[5] If internal quotation marks or citations existed in any of these cases, they were omitted.

7

transactions may be granted [administrative expense] priority."), cert. denied, __ U.S. __, 126 S.Ct. 2328 (U.S. 2006)(parentheticals added);

CIT Communications Finance Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.), 406 F.3d 229, 237 (4th Cir. 2005)("The term 'administrative expense' is not defined in the Code, but courts agree that an administrative expense has two defining characteristics:  (1) the expense and right to payment arise after the filing of bankruptcy, and (2) the consideration supporting the right to payment provides some benefit to the estate.");

Ars Brook, LLC v. Jalbert (In re Servisense.com, Inc.), 382 F.3d 68, 72 (1st Cir. 2004)("For a claim to be entitled to administrative priority in bankruptcy, it must arise after the bankruptcy petition has been filed.");

In re Kmart Corp., 359 F.3d 866, 872 (7th Cir. 2004)("Pre-filing debts are not administrative expenses; they are the antithesis of administrative expenses."), cert. denied sub nom., Handleman Co. v. Capital Factors, Inc., 543 U.S. 986 (2004);

Einstein/Noah Bagel Corp. v. Smith (In re BCE West, L.P.), 319 F.3d 1166, 1172 (9th Cir. 2003)("[O]nly post-petition debts can be treated as administrative expenses; pre-petition debts may not be granted administrative-expense priority.");

Former Employees of Builders Square Retail Stores v. Hechinger Investment Company of Delaware (In re Hechinger Investment Company of Delaware), 298 F.3d 219, 226 (3rd Cir. 2002)("Instead, § 503(b)(1)(A) refers to services that are 'rendered after the commencement of the case' and that are needed for the purpose 'of preserving the estate.'   An estate cannot be preserved until it comes into existence, and as the Bankruptcy Court observed, '[t]he estate does not exist prepetition.'");

Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.), 258 F.3d 385, 387 (5th Cir. 2001)("In order to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefitted the estate.");

Bachman v. Commercial Financial Services, Inc. (In re Commercial Financial Services, Inc.), 246 F.3d 1291, 1295 (10th Cir. 2001)("Here, in order for appellants to prevail, the liability must arise post-petition; it is not enough that the right to payment arose after the debtor in possession assumed control.");

Kadjevich v. Kadjevich (In re Jadjevich), 220 F.3d 1016, 1019 (9th Cir. 2000) ("Critically, however, only post-petition debts can be treated as administrative

expenses; pre-petition debts may not be granted administrative-expense priority.");

Pension Benefit Guaranty Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.), 126 F.3d 811, 817 (6th Cir. 1997)("As our opinion today makes clear, it is an absolute requirement for administrative expense priority that the liability at issue arise post-petition.");

General American Transportation Corp v. Martin (In re Mid Region Petroleum, Inc.), 1 F.3d 1130, 1132 (10th Cir. 1993)("Administrative expenses are specially favored post-petition claims, given priority in asset distribution over most other claims against the bankruptcy estate.");

In re Roth American, Inc., 975 F.2d 949, 958 (3rd Cir. 1992)(union's claims for vacation pay and severance pay were properly accorded first priority as administrative expenses only to the extent that those benefits were earned by services rendered post-petition);

Woburn Associates v. Kahn (In re Hemingway Transport, Inc.), 954 F.2d 1, 5 (1st Cir. 1992)("[A] request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor....");

Trustee of the Amalgamated Ins. Fund v. McFarlin's Inc., 789 F.2d 98, 101 (2nd Cir. 1986)("Accordingly, an expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession....");

Tidewater Finance Co v. Henson, 272 B.R. 135, 139 (D. Md. 2001)("A prepetition creditor, by virtue of having transacted with a debtor before he or she files for bankruptcy, ordinarily fails the first prong of the administrative expense test (requiring a postpetition transaction between the creditor and the estate)."), aff'd, 57 Fed.Appx. 136, No. 02-1126, 2003 WL 122503 (4th Cir. Jan. 15, 2003);

Lasky v. Phones For All, Inc. (In re Phones For All, Inc.), 262 B.R. 914, 918 (N.D. Tex. 2001)("Accordingly, an expense is entitled to administrative priority treatment only if (1) it results from a transaction between the claimant and the trustee of the bankruptcy estate or a debtor in possession; and (2) the benefit to the debtor, and hence the right to payment, accrues post-petition."), aff'd, 288 F.3d 730 (5th Cir. 2002);

Kucin v. Devan, 251 B.R. 269, 271 (D. Md. 2000)("Generally, in order to qualify as a § 503 administrative expense, '(1) the claim must arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee)....'");

<u>Vanco Trading, Inc. v. Monheit</u>, No. 3:95CV02681 (EBB), 1999 WL 464531, *4 (D. Conn. June 17, 1999)("The result of which is the determination that Vanco's October 29, 1992 delivery of the Chemicals to K Chemical Corp., occurred prior in time to the filing of the Debtor's petition at 4:05 p.m., making Vanco's transaction pre-petition.  Therefore, Vanco is not entitled to an administrative expense priority claim.");

<u>Lastra v. Estevez (In re Bay Broadcasting, Inc.)</u>, 182 B.R. 369, 374 (D.P.R. 1995)("[T]he requirement that for an expense to qualify as an administrative expense... mandates that the expense be incurred after there is a debtor in possession and not when there is a pre-petition debtor.");

<u>Fireman's Fund Ins. Co. v. Wheeling-Pittsburg Steel Corp. (In re Wheeling-Pittsburg Steel Corp.)</u>, 67 B.R. 620, 623 (W.D. Pa. 1986)("It is clear to this court that the claims in question do not qualify for administrative expense priority under Section 503(b)(1)(A) because these were not necessary for the preservation of the bankrupt estate and they do not result from a postpetition transaction.");

<u>Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)</u>, 64 B.R. 586, 592 (N.D. Ohio 1986)("This Court is called upon to determine whether ETC's post-petition expenditures on pre-petition houses are attributable to the pre-filing or post-filing period.  If attributable to the latter, then the expenditures claimed by ETC are administrative expenses entitled to priority under sections 503 and 507."), <u>aff'd</u>, 831 F.2d 106 (6th Cir. 1987);

<u>In re Baldwin-United Corp.</u>, 43 B.R. 443, 454 (S.D. Ohio 1984)("Because a determination that a debt which matured pre-petition but did not come due until post-petition is, we think, wholly outside the statute, we see no basis for the assertion that the court enjoys the discretion to authorize such expenditures as administrative expenses.");

<u>Xifaras v. Morad (In re Morad)</u>, 328 B.R. 264, 272 (BAP 1st Cir. 2005)("To allow otherwise would elevate ordinary pre-filing claims for goods and services to administrative expense status.  Services rendered prior to the existence of an estate, like the recovery by Xifaras in this instance, are not administrative services.");

<u>The Beneke Co. v. Economy Lodging Systems, Inc. (In re Economy Lodging Systems, Inc.)</u>, 234 B.R. 691, 697 (BAP 6th Cir. 1999)("[I]t is an absolute requirement for administrative expense priority that liability at issue arise post-petition.");

<u>Ideal Aerosmith, Inc. v. Carco Electronics (In re Carco Electronics)</u>, No. 03-33809 BM, 2006 WL 2129757, *4 (Bankr. W.D. Pa. July 25, 2006)("Read in its entirety, § 503(b) involves a <u>quid pro quo</u> whereby the bankruptcy estate

incurs a post-petition obligation in return for some consideration required for the operation of the business or the rehabilitation of the estate.");

In re A.C.E. Elevator Co., No. 04-17994 (RDD), 2006 WL 2390579, *4 (Bankr. S.D.N.Y. June 23, 2006)("Consistent with the plain meaning of section 503(b)(1)(A), the McFarlin's court noted that 'an expense is administrative only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor in possession;' that is, the claim will have a first priority only if the transaction giving rise to it occurred postpetition.");

In re CK Liquidation Corp., No. 03-44906-HJB, 2006 WL 1302614, *4 (Bankr. D. Mass. May 9, 2006)("[I]t is well-settled that 'for a claim to qualify as an administrative expense under subsection 503(b)(1), (1) it must have arisen from a transaction with the trustee or debtor in possession, rather than from a prepetition transaction with the debtor....'");

In re Statepark Building Group, Ltd., No. 04-33916-HDH-11, 2005 WL 2589179, *1 (Bankr. N.D. Tex. June 29, 2005)("As a general rule, pre-petition claims may not be elevated to postpetition administrative expenses.");

In re Southwest Florida Heart Group, P.A., 343 B.R. 332, 334 (Bankr. M.D. Fla. 2006)("[S]ome of these amounts collected were as a result of the collection efforts made prior to the commencement of the Chapter 11 case and prior to the execution of the Transition Service Agreement. Thus, for this reason, it cannot be recognized as a proper administrative expense.");

In re Sports Shinko (Florida) Co., Ltd., 333 B.R. 483, 500 (Bankr. M.D. Fla. 2005)("Administrative expense status is only granted for liabilities that arise postpetition.");

In re American Plumbing & Mechanical, Inc., 323 B.R. 442, 459 (Bankr. W.D. Tex. 2005)("The Fifth Circuit has said that [i]n order to qualify as an 'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have arisen post-petition and as a result of actions taken by the trustee that benefitted the estate.");

In re Garden Ridge Corp., 321 B.R. 669, 676 (Bankr. D. Del. 2005)("Generally, courts apply a two-part test in determining whether a claimant is entitled to the payment of administrative expenses: (1) there must be a post-petition transaction between the creditor and the debtor; and (2) the estate must receive a benefit from the transaction.");

In re Central Idaho Forest Products, 317 B.R. 150, 156 (Bankr. D. Idaho. 2004)("In order to qualify for a administrative expense under § 503(b)(1)(A), the Buswells must demonstrate 'that the debt asserted to be an administrative

11

expense (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate.'");

In re National Steel Corp., 316 B.R. 287, 300 (Bankr. N.D. Ill. 2004)("[F]or a claim to be allowed as an administrative expense, goods or services must be delivered or provided pursuant to a post-petition transaction; it is not enough that payment becomes due after the petition date if the transaction was entered into with the debtor prepetition.");

In re CEI Roofing, Inc., 315 B.R. 50, 54 (Bankr. N.D. Tex. 2004)("Pre-filing debts are not administrative expenses; they are the antithesis of administrative expenses.");

In re Lason, Inc., 314 B.R. 296, 303 (Bankr. D. Del. 2004)("A claim is entitled to administrative expense claim status under section 503(b) if services were performed post-petition which provided a benefit to the bankruptcy estate.");

In re Insilco Technologies, Inc., 309 B.R. 111, 114 (Bankr. D. Del. 2004)("This requires the claimant to establish that its: (1) expense arose from a post-petition transaction with the debtor and (2) that the transaction accorded the estate an actual benefit.");

In re Colorado Springs Symphony Orchestra Ass'n, 308 B.R. 508, 515 (Bankr. D. Col. 2004)("[There are] two requirements for approval of an administrative expense under §§ 503(b)(1)(A): 1) it must result from a post-petition transaction with the debtor-in-possession or trustee ...."), aff'd sub nom., Peters v. Pikes Peak Musicians Ass'n., No. 05-1017, 2006 WL 2522471 (10th Cir. Sept. 1, 2006);

In re G-I Holdings, Inc., 308 B.R. 196, 209 (Bankr. D.N.J. 2004)("With respect to an award of administrative expense priority under § 503(b) of the Code, it is an 'absolute requirement' that the liability at issue arose post-petition.");

In re WorldCom, Inc., 308 B.R. 157, 166 (Bankr. S.D.N.Y. 2004)("If the consideration was supplied pre-petition, the claim is not entitled to administrative priority even where the right to payment arises post-petition.");

In re Pugh Shows, Inc., 307 B.R. 50, 57 (Bankr. S.D. Ohio 2004)("Administrative expense status is only granted for liabilities that arise postpetition.");

In re Motel Investments of Christiansburg, LLC, 307 B.R. 536, 539 (Bankr. W.D. Va. 2004)("To qualify as an actual and necessary expense, '(1) the claim must

12

arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee)....'");

In re Adelphia Business Solutions, Inc., 296 B.R. 656, 664 n.8 (Bankr. S.D.N.Y. 2003)("In general, for a claim to qualify as an administrative expense under section 503(b)(1), (1) it must have arisen from a transaction with the trustee or debtor-in-possession, rather than from a prepetition transaction with the debtor....  The emphasis is on when, and with whom, the transaction took place, as compared and contrasted to the nature of the 'transaction.'");

In re Harnischfeger Industries, Inc., 293 B.R. 650, 659 (Bankr. D. Del. 2003)("Determining whether a creditor has an administrative claim is a two-prong test: 'first, [the claimant] must show either that the debtor-in-possession (not the pre-petition entity) incurred the transaction on which the claim is based, or that the claimant furnished the consideration to the debtor-in-possession (not the pre-petition entity).'");

In re Dailey, 289 B.R. 157, 161 (Bankr. D. Mont. 2003)("[O]nly post-petition debts can be treated as administrative expenses; pre-petition debts may not be granted administrative expense priority.");

In re Franklin, 284 B.R. 739, 742 (Bankr. D.N.M. 2002)("Only those debts that arise after the filing of a bankruptcy may have administrative expense priority.");

 In re Pittsburgh-Canfield Corp., 283 B.R. 231, 239 (Bankr. N.D. Ohio 2002)("Plaintiff's claimed administrative expense did not arise from a transaction with the bankruptcy estate.  For a matter to arise from a transaction with the bankruptcy estate, it must occur post-petition.");

Ballard v. Chrysler Fin. Corp. (In re Powe), 281 B.R. 336, 346 (Bankr. S.D. Ala. 2001)("Administrative expenses are postpetition claims against the bankruptcy estate."), appeal dismissed sub nom., Chrysler Credit Corp. v. Powe, 312 F.3d 1241 (11th Cir. 2002), cert. denied sub nom., DaimlerChrysler Services North America LLC v. Powe, 538 U.S. 998 (2003);

In re Talk City, Inc., 281 B.R. 132, 146 (Bankr. D. Mass. 2002)("The Court finds that the first five of these items are simply delayed turnover services; the Court will deny them for the same reasons that administrative expense status was denied to turnover services above: they are part of LiveWorld's prepetition claim and therefore are not administrative expenses.");

In re Enron Corp., 279 B.R. 695, 705 (Bankr. S.D.N.Y. 2002)("The services performed by the claimant must have been 'induced' by the debtor-in-possession, not the pre-petition debtor.");

13

In re White Rock, Inc., No. 01-44553M, 2002 WL 32114479, *2 (Bankr. E.D. Ark. May 17, 2002)("In general, most courts have determined that for a postpetition debt to qualify as a necessary preservation expense, it must satisfy two requirements: '(1) it must have arisen from a transaction with the estate and (2) it must have benefitted the estate in some demonstrable way.'");

In re Valley Media, Inc., 279 B.R. 105, 141 (Bankr. D. Del. 2002)("Section 503(b) contemplates some quid-pro-quo wherein the estate accrues debt in exchange for some consideration necessary to the operation of the estate.");

 In re Roberds, Inc., 270 B.R. 702, 706 (Bankr. S.D. Ohio 2001)("An administrative claim (1) must have arisen from a post-petition transaction with the estate....");

In re Interstate Grocery Distributions System, Inc., 267 B.R. 907, 913 (Bankr. D.N.J. 2001)("First, the claim must arise from a post-petition transaction with the debtor.");

In re Visi-Trak, Inc., 266 B.R. 372, 375 (Bankr. N.D. Ohio 2001)("Courts have afforded administrative expense priority under §§ 503(b) only if: (1) the claim arose from a transaction with the bankruptcy estate; and (2) it directly and substantially benefitted the estate.");

In re Cincinnati Cordage and Paper Co., 271 B.R. 264, 268 (Bankr. S.D. Ohio 2001)("Second, as discussed above, it is generally not possible to convert a pre-petition contract into an administrative expense claim.");

In re Travel 2000, Inc., 264 B.R. 444, 450 (Bankr. W.D. Mich. 2001)("Section 365(d)(3) expressly indicates that it is meant to constitute an exception to the provisions of the Code governing administrative expenses, which are strictly postpetition in nature, but it does not state that it is meant to constitute an exception to the provisions governing claims.");

In re D.M. Kaye & Sons Transport, Inc., 259 B.R. 114, 120 (Bankr. D.S.C. 2001)("If the commitments of the parties arose prepetition, there is no administrative expense payable from the bankruptcy estate.");

In re Section 20 Land Group, Ltd., 261 B.R. 711, 715 (Bankr. M.D. Fla. 2000)("To establish entitlement to an administrative expense claim, claimant must show that the claim arose from a post-petition transaction and that the transaction actually benefited the estate.");

In re Nationwise Automotive, Inc., 250 B.R. 900, 903 (Bankr. S.D. Ohio 2000)("It is an absolute requirement for administrative expense priority that the liability at issue arise post-petition.");

14

In re Hepworth, No. 99-41514, 2000 WL 33712220, *2 (Bankr. D. Idaho May 30, 2000)("Courts from other jurisdictions have found that even hours or minutes are important in determining whether a debt was incurred pre- or postpetition.... Because the Creditors' loan of the $12,400 to Debtors occurred before the bankruptcy case was commenced, Creditors' claim is not entitled to administrative expense priority.");

In re Southern Soya Corp., 251 B.R. 302, 308 (Bankr. D.S.C. 2000)("The general rule is that, in order for a claim to be qualified as an administrative expense, the claimant must prove that (a) it arises from a transaction entered into post-petition ....");

In re Russell Cave Co., Inc., 249 B.R. 145, 147 (Bankr. E.D. Ky. 2000)("The benefit to the estate test limits administrative claims to those where the consideration for the claim was received during the post-petition period.");

In re Merry-Go-Round Enterprises, Inc., 241 B.R. 124, 129 (Bankr. D. Md. 1999)("For a claim to qualify as an actual and necessary administrative expense, '(1) the claim must arise out of post-petition transaction between the creditor and the debtor-in-possession (or trustee)....'");

In re Commercial Financial Services, Inc., 233 B.R. 885, 891 n.4 (Bankr. N.D. Okla. 1999)("The benefit to the estate test limits administrative claims to those where consideration for the claim was received during the post-petition period."), aff'd, 246 F.3d 1291 (10th Cir. 2001);

In re Mid-American Waste Systems, Inc., 228 B.R. 816, 821 (Bankr. D. Del. 1999)("To establish administrative priority under § 503(b)(1)(A), the O & D Claimants must demonstrate that the claimed expenses (I) arose out of a postpetition transaction with the debtor-in-possession and (ii) directly and substantially benefitted the estate.");

In re Heritage Leasing Corp., No. C/A 96-75946-W, 1998 WL 2016851, *2 (Bankr. D.S.C. Sept. 17, 1998)("Generally, a claim for an administrative expense status will qualify under 11 U.S.C. § 503 if the right to payment arose from a postpetition transaction with the debtor estate rather than from a prepetition transaction with the debtor, and the conduct giving rise to the payment was beneficial to the estate of the debtor.");

In re Robinson, 225 B.R. 228, 232 (Bankr. N.D. Okla. 1998)("Under the two prong test the expense (1) must have arisen from a transaction with the estate, i.e., must be a post-petition transaction; and (2) the estate must have benefitted in some demonstrable way i.e., it must be necessary to preserve the estate.");

15

In re Westmoreland Coal Co., 213 B.R. 1, 17 (Bankr. D. Col. 1997)
("Administrative expense priority under §§ 503(b)(1)(A) is reserved for obligations
incurred during the course of the bankruptcy case which arise from the
postpetition operation of a debtor's business or administration of the bankruptcy
case.");

In re Conty, 205 B.R. 329, 332 (Bankr. M.D. Fla. 1996)("Presutti's action in state
court for the writ of garnishment was prepetition and therefore not reimbursable
under § 503");

Sibarium v. Karp, Leonetti & Co. (In re New England Software, Inc., 204 B.R.
334, 336 (Bankr. D. Conn. 1996)("Administrative expenses under 11 U.S.C.
§ 503 are payable only if they are subsequent to the filing of the debtor's
petition....  This is so because administrative expense claims are created by
statute and not by the courts or on the basis of equitable grounds arising out of
the conduct of the parties....");

In re Lunan Family Restaurants, 194 B.R. 429, 449 (Bankr. N.D. Ill. 1996)("If the
commitments of the parties arose prepetition, there is no administrative expense
payable from the bankruptcy estate.");

In re Hohenberg, 191 B.R. 694, 701 (Bankr. W.D. Tenn. 1996)("Moreover, Mr.
Hohenberg's transfer of the $350,000 was prepetition, and administrative
expenses under § 503 concern postpetition expenses.  By definition, the
$350,000 transfer could not be an administrative expense.");

In re Mahoney-Troast Const. Co., 189 B.R. 57, 59 (Bankr. D.N.J. 1995)("Since
Code section 503(b) concerns itself with expenses incurred in connection with
the bankruptcy estate, the expense must be one which arises post-petition.");

In re Sunarhauserman, Inc., 184 B.R. 279, 281 (Bankr. N.D. Ohio 1995)("In
general, to qualify as an administrative expense the claim must not only arise
postpetition but must bear an appropriate relation to the postpetition period as
well.");

In re Florida West Gateway, Inc., 180 B.R. 299, 301 (Bankr. S.D. Fla.
1995)("Three (3) factors are determinative of administrative expense status
under 11 U.S.C. §§ 503: (I) the claim must be derived from debt incurred post-
petition....");

In re HSD Venture, 178 B.R. 831, 836 (Bankr. S.D. Cal. 1995)(commissions due
real estate brokers for prepetition efforts which resulted in contracts for sales of
debtor-in-possession's condominium units being obtained would not be allowed
as administrative expenses pursuant to 503(b)(3)(D) where sales did not close
until after bankruptcy petition was filed);

16

In re First Technology Corp., 178 B.R. 530, 532 (Bankr. M.D. Fla. 1995)("To be considered an actual necessary cost or expense of preserving the estate the expense must... arise post petition.");

In re Food Barn Stores, Inc., 175 B.R. 723, 726 (Bankr. W.D. Mo. 1994)("As a general rule, a request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor.  Both criteria must be met to mandate allowance of an administrative expense priority claim.");

In re Piper Aircraft Corp., 169 B.R. 766, 776-777 (Bankr. S.D. Fla. 1994)("Either one has a right to treatment as an administrative expense, if the events giving rise to the claim involved postpetition conduct by the debtor-in-possession or one holds a 'claim' arising or deemed to arise before the filing of the petition, if the claim is tied to prepetition conduct of the debtor. There is no in between.... This is so because the concept of 'claim' is tied to a debtor's prepetition conduct as distinct from an administrative expense which is tied to postpetition conduct.");

In re Williams, 165 B.R. 840, 841 (Bankr. M.D. Tenn. 1993)("Under § 503(b)(1)(A), two conditions must be met for a claim to qualify as an administrative expense.  First, the expense must be for services rendered in 'preserving the estate.' Under § 541(a), the estate is created only after a petition has been filed. Thus, to preserve the estate, an expense would have to be postpetition.");

In re Monarch Capital Corp., 163 B.R. 899, 906 (Bankr. D. Mass. 1994)("As a general rule, a request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if: (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor....");

In re 9 Stevens Café, Inc., 161 B.R. 96, 97 (Bankr. S.D.N.Y. 1993)("When Mann performed most of his legal services for the debtor, there was no bankruptcy estate. Therefore, these prepetition services may not qualify as an administrative expense priority under 11 U.S.C. §§ 503(b)(3)(D) as a substantial contribution in a case under Chapter 11.");

In re Finevest Foods, Inc., 159 B.R. 972, 975 (Bankr. M.D. Fla. 1993)("To establish entitlement to an administrative expense claim, the claimant must show (1) the claim arose from a post-petition transaction....");

17

In re Broaddus Hosp. Ass'n, 159 B.R. 763, 768 (Bankr. N.D. W. Va. 1993)("Only those obligations of a debtor's estate which arise post-petition are entitled to administrative expense treatment.");

In re T & T Roofing and Sheet Metal, Inc., 156 B.R. 780, 782 (Bankr. N.D. Tex. 1993)("By definition, pre-petition claims do not constitute expenses of administering a bankruptcy estate.");

In re Dynacircuits, L.P., 143 B.R. 174, 176 (Bankr. N.D. Ill. 1992)("As this test demonstrates, it is the time at which the services are rendered that is dispositive of the issue of whether an administrative expense is allowed.");

In re Finevest Foods, Inc., 140 B.R. 581, 584 (Bankr. M.D. Fla. 1992)("The estate was not created until the petition was filed, thus any utilities dispensed prior to the filing was neither tendered nor beneficial to the estate. Accordingly, payment for such electricity is not entitled to an administrative priority.");

In re New York Trap Rock Corp., 137 B.R. 568, 572 (Bankr. S.D.N.Y. 1992)("Generally, a claim for an administrative expense status will qualify under 11 U.S.C. § 503 if the right to payment arose from a post-petition transaction with the debtor estate rather than from a prepetition transaction with the debtor....");

In re Cardinal Industries, Inc., 142 B.R. 801, 804 (Bankr. S.D. Ohio 1992)("If the commitments of the parties arose prepetition, there is no administrative expense payable from the bankruptcy estate.");

In re Highland Group, Inc., 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992)("Accordingly, J.C. Penney's claim would be a prepetition claim, if allowed, and therefore, it would not rise to an administrative expense status.");

In re Great Northern Forest Products, Inc., 135 B.R. 46, 59 (Bankr. W.D. Mich. 1991)("Only postpetition debts may be accorded administrative expense priority.");

Firearms Import and Export Corp. v. United Capital Ins. Co. (In re Firearms Import and Export Corp.), 131 B.R. 1009, 1015 (Bankr. S.D. Fla. 1991)("As a general principle, 'only those obligations of a debtor's estate which arise post-petition ... are entitled to treatment as administrative expenses.'");

In re Balport Const. Co., Inc., 123 B.R. 174, 180 (Bankr. S.D.N.Y. 1991)("Only those services and expenses which were performed or incurred by entities described in section 503(b)(3)(D) during the pendency of the Chapter 11 case and which constituted a 'substantial contribution' to the Chapter 11 case, are eligible for reimbursement on an administrative priority basis.");

18

In re I.D. Craig Service Corp., No. 89-00640, 1990 WL 53050, *1 (Bankr. W.D. Pa. Apr. 23, 1990)("At the hearing on April 4, 1990, the court granted petitioner Eric F. Solomon leave to file, by April 11, 1990, a brief citing authority to support his position that a prepetition claim for fees for attorney's services constituted an allowable administrative expense under § 503(b). No brief was filed. In view of the express statutory language that administrative expenses are only those for services rendered postpetition, the motion will be denied.");

In re Michigan General Corp., 102 B.R. 554, 557 (Bankr. N.D. Tex. 1988)("[P]re-petition expenses are, by definition, not administrative expenses.");

In re Washington Mfg. Co., 101 B.R. 944, 958 (Bankr. M.D. Tenn. 1989)("[T]o the extent that its claim is for prepetition services contracted by the prepetition debtors, it does not qualify as an administrative expense claim pursuant to § 503(b)(1)(A).");

In re Precision Carwash Corp., 90 B.R. 34, 38 (Bankr. E.D.N.Y. 1988)("If the creditor's services have been fully performed pre-petition and all that remains is the payment of money, the debtor cannot give the debt administrative status....");

In re Jeurissen, 85 B.R. 531, 535 (Bankr. D. Minn. 1988)("Only those obligations of a debtor that arise post-petition are entitled to treatment as administrative expenses.");

In re Nevins Ammunition, Inc., 79 B.R. 11, 13 (Bankr. D. Idaho 1987)("Obviously, only those transactions which occur post-petition can be considered for priority administrative expense.");

In re Moskovic, 77 B.R. 421, 423 (Bankr. S.D.N.Y. 1987)("The real estate broker is a prepetition creditor holding a general unsecured claim against this estate and does not have an administration expense priority claim which would justify the brokerage commissions being paid directly from the proceeds of the sale.");

In re Keegan Utility Contractors, Inc., 70 B.R. 87, 89 (Bankr. W.D.N.Y. 1987)("Ultimately, administrative expense status should be granted only to claims representing post-petition debts incurred by the debtor to preserve the estate.");

In re R & B Institutional Sales, Inc., 65 B.R. 876, 883 (Bankr. W.D. Pa. 1986)("As counsel was hired to bring a benefit to the estate, and as the estate was not created until the bankruptcy was actually filed, this pre-petition time is not compensable from the estate.");

In re Frank Meador Buick, Inc., 59 B.R. 787, 791 (Bankr. W.D. Va. 1986)("It is clear that only those obligations of a debtor's estate which arise post-petition and

19

fall within the parameters of § 503(b) are entitled to treatment as administrative expenses."), aff'd, 65 B.R. 200 (W.D. Va. 1986);

In re Lockwood Enterprises, Inc., 54 B.R. 829, 832 (Bankr. S.D.N.Y. 1985)("So too, in this case, the creditor may not transform a sow's ear into a silk purse by converting a pre-petition debt into a post-petition administrative expense.");

In re The Charter Co., 52 B.R. 267, 270 (Bankr. M.D. Fla. 1985)("One who fully performs under a contract prior to the Filing Date is not entitled to an administrative expense, even though his services may result in a direct benefit to the estate after the Filing Date.");

In re Cott Corp., 47 B.R. 487, 495 (Bankr. D. Conn. 1984)("The claim in this estate can be divided into two amounts based upon the period covered by the claim that was prepetition and the period which was postpetition. The prepetition amount is a general, unsecured claim and the postpetition portion has priority status as an administrative expense.");

In re John Clay and Co., Inc., 43 B.R. 797, 807 (Bankr. D. Utah 1984)("For a claim to be accorded an administrative expense priority, it must be predicated on a debt incurred (1) for the actual and necessary costs of preserving the estate and (2) after the commencement of the case.");

Thomas v. Ralston Purina Co. (In re Thomas), 43 B.R. 201, 208 (Bankr. M.D. Ga. 1984)("Finally, section 503(b) provides that an entity which expends money after the commencement of the case for preserving the estate may be entitled to the payment of an administrative expense.");

Brown v. Traders Nat'l Bank (In re Spears), 39 B.R. 91, 96 (Bankr. E.D. Tenn. 1984)("The courts have generally read the statute to mean that an administrative claim can be allowed only for debts incurred after commencement of the bankruptcy case-in other words, for debts incurred by the bankruptcy estate.");

Benn v. Halyard Realty Trust (In re Halyard Realty Trust), 37 B.R. 260, 264 (Bankr. D. Mass. 1983)("One who fully performs under a contract prior to the filing of the bankruptcy petition is not entitled to an administrative claim even though his services may have benefitted the estate after the filing.");

In re Fuzzy Thurston's Eau Claire Left Guard, Inc., 33 B.R. 579, 581 (Bankr. W.D. Wis. 1983)("A general rule in determining whether a claim arises from preservation of the bankruptcy estate is that only postpetition expenses are entitled to administrative priority.");

In re Baths Intern., Inc., 25 B.R. 538, 540 (Bankr. S.D.N.Y. 1982)("It is equally clear that a claimant who fully performs under a contract prior to the filing of the

20

petition will not be entitled to first priority even though his services may have resulted in a direct benefit to the bankrupt estate after the filing."), aff'd, 31 B.R. 143 (S.D.N.Y. 1983);

In re World Fashions, Inc., 24 B.R. 452, 455 (Bankr. N.D. Ga. 1982)("Since under Georgia law a sale consists of the passage of title from the seller to the buyer for a price, the court holds that a sale occurred and hence the debt was incurred on March 5, 1982, three days before the debtor filed its petition. For that reason, we hold that the petitioner has an unsecured pre-petition claim for $5,520.00 and not a post-petition claim for an administrative expense.");

In re Boogaart of Florida, Inc., 23 B.R. 157, 158 (Bankr. S.D. Fla. 1982)("It is clear that only those obligations of a debtor's estate which arise post-petition and fall within the parameters of 11 U.S.C. § 503(b) are entitled to treatment as administrative expenses.").

Based on the above, the Court finds that the expenditures made by, and the obligations incurred by, AmSouth in connection with its prepetition prosecution of the causes of action ultimately settled by the trustee, may not be allowed or paid as administrative expenses in this case.[6]

### B.  The cases AmSouth cites are distinguishable,
### are not persuasive, or are not on point,
### and the cases that rely on section 503(b)(3)(D) are not applicable.

AmSouth cited six cases in support of its contentions.  Those are:  United States v. Air Line Pilots Assoc., Int'l (In re Trans World Airlines, Inc.), No. 92-115, 1993 WL 559245 (D. Del. June 22, 1993); Monroe & Lemann v. Martin Exploration Co. (In re Martin Exploration), No. 89-0173, 1989 WL 152565 (E.D. La. Dec. 11, 1989); Younger v. United States (In re Younger), 165 B.R. 965 (S.D. Ga. 1994), aff'd, 51 F.3d 1051 (11th Cir., Mar. 27, 1995)("Table of Decisions Without Reported Opinions, No. 94-8573), cert. denied, 516 U.S. 912 (1995); In re Zedda, 169 B.R. 605 (Bankr. E.D. La. 1994); In re Antar, 122 B.R. 788 (Bankr. S.D. Fla. 1990); In re George, 23 B.R. 686 (Bankr. S.D. Fla. 1982).

Four of those cases, Younger, Zedda, Antar, and George, are distinguishable.[7]

---

[6] AmSouth couches its issue in terms of whether it is entitled to an evidentiary hearing on its application.  Because of the Court's ruling, the Court finds that a hearing is not warranted or required.

[7]  Although these cases recognized that administrative expenses status may be paid under section 503(b), all four cases are distinguishable from the current case.  None of the creditors in these cases sought priority status for prepetition expenses.  In Younger, the U.S.

21

In each of those cases the fees, costs, and expenses claimed, were like the present case, incurred postpetition in Chapter 7 cases. They do not stand for the proposition that prepetition expenses may qualify for administrative expense status.

The two remaining cases AmSouth cites, Martin Exploration and Trans World, are also not supportive of its claim. The administrative expense status the courts in Martin Exploration and Trans World, recognized was based on section 503(b)(3)(D).[8] That section is of course, limited to Chapter 9 and Chapter 11 cases and does not apply here, as AmSouth recognized in its Supplemental Brief of AmSouth Bank in Support of Motion for Administrative Priority. In that brief AmSouth conceded that section 503(b)(3)(D) is inapplicable to, and supplies no statutory basis for granting, its request. It wrote, "By its express terms § 503(b)(3)(D) is limited to only cases under Chapters 9 and 11 of the Bankruptcy Code. Consequently, AmSouth cannot represent to the Court that §503(b)(3)(D) would apply to the Motion now at bar." Id. at 2.

It is unclear then why AmSouth relied on Trans World and Martin Exploration unless it was to support a general proposition that a creditor's prepetition professional fees and costs may be accorded administrative expense priority. If that is the reason, the Court must reject it. As the discussion below demonstrates, cases that rely on section 503(b)(3)(D) are not applicable to the situation before this Court.

_____

Marshal Service sought administrative expenses status for postpetition costs of incarcerating and providing medical treatment to Chapter 7 debtor. In Zedda, although the claimants performed some prepetition work, they did not seek compensation for that work. In Antar and George, the issue was whether a creditor's attorney who had not obtained prior court approval for an action against the debtor should be approved retroactively to receive administrative expenses status for postpetition work. Antar relied on George.

[8] In Martin Exploration, the district court noted that some courts may accord administrative expense priority to prepetition services and costs pursuant to section 503(b) in situations where there were substantial contributions rendered in Chapter 11 cases. While the court did not specifically mention subsection 503(b)(3)(D), it recognized, "The appropriate test under Section 503(b) is whether the services substantially contributed to a successful result...." Id. at *3 (emphasis added). Substantial contribution of course appears in only one subsection of section 503 – that is subsection 503(b)(3)(D). The result in that case was that the court reversed the bankruptcy court's order allowing an administrative expense because the record did not contain any evidence that the prepetition services and costs substantially contributed to the case and because there were no supporting findings of fact by the bankruptcy court. Id. at *3.

In Trans World, the issue of whether prepetition fees and expenses may be paid as administrative expenses was directly before the appellant court. And that court affirmed the bankruptcy court's allowance of administrative expense status for prepetition costs. But Trans World was a Chapter 11 case, and the award of administrative expenses by the bankruptcy court and the district court were based on subsection 503(b)(3)(D).

22

In addition to Trans World and Martin Exploration, other courts have indicated a willingness to grant administrative expense priority pursuant to section 503(b)(3)(D) to prepetition fees and expenses incurred by creditors who make substantial contributions in Chapter 11 cases. Lebron v. Mechem Financial, Inc., 27 F.3d 937, 945 (3rd Cir. 1994); Haskins v. United States (In re Lister), 846 F.2d 55, 57 (10th Cir. 1988); In re Essential Therapeutics, Inc., 308 B.R. 170, 175 (Bankr. D. Del. 2004); In re Alert Holdings, Inc., 157 B.R. 753, 758 (Bankr. S.D.N.Y. 1993); Scott v. Mechem Financial, Inc. (In re Mechem Financial, Inc.), 152 B.R. 57, 60 (Bankr. W.D. Pa. 1993), subsequently aff'd and remanded sub nom., Lebron v. Mechem Financial, Inc., 27 F.3d 937, 945 (3rd Cir. 1994); In re Financial News Network Inc., 134 B.R. 732, 736 (Bankr. S.D.N.Y. 1991); In re Texaco, Inc., 90 B.R. 622, 630-631 (Bankr. S.D.N.Y. 1988); In re Russell Transfer, Inc., 59 B.R. 871, 872-873 (Bankr. W.D. Va. 1986); In re Valley Isle Broadcasting, Ltd., 56 B.R. 505, 506 (Bankr. D. Hawai'i 1985); In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 572 (Bankr. D. Utah 1985); In re Med General, Inc., 17 B.R. 13, 14 (Bankr. D. Minn. 1981).

But, none of those cases, including Trans World and Martin Exploration, are on point. All involve Chapter 11 cases, which this one is not. In addition, all were decided under section 503(b)(3)(D), which, aside from not being applicable to Chapter 7 cases, is not the statute upon which AmSouth's has based its administrative expense request.

Moreover, any persuasive support that section 503(b)(3)(D) cases might lend is eroded because the prepetition fees and expenses that were allowed as administrative expenses, in addition to Trans World, were allowed in only four of the above. Those are Lebron and Mechem Financial, (which are the same case), and Russell Transfer, and Med General.

Furthermore, quite a number of other courts have reached the opposite result in substantially similar circumstances, both under section 503(b)(3)(D) and section 503(b)(1)(A). Those courts held in circumstances where a creditor renders services, or incurs expenses, or provides goods to a Chapter 11 debtor-in-possession **prepetition**, that the creditor was not entitled to an administrative expense priority even if those services, expenses, or products resulted in a postpetition benefit to the debtor-in-possession. Examples include:

In re Jartran, Inc., 732 F.2d 584 (7th Cir. 1984)(advertising agency which, prepetition, placed debtor-in-possession's orders for classified advertisements in Yellow Pages with an advertising company, and advertising company which in turn, arranged prepetition to have debtor-in-possession's ads to appear in Yellow Page directories nationwide, were not allowed administrative expense claims for the cost of the advertising even though the advertising was not published until after the debtor-in-possession filed its Chapter 11 petition and there was no question that the appearance of the ads in Yellow Page directories throughout the country was beneficial to the debtor-in-possession in the operation of its business);

23

<u>Vanco Trading, Inc. v. Monheit</u>, No. 3:95CV02681 (EBB), 1999 WL 464531 (D. Conn. June 17, 1999)(supplier of chemical products was not entitled to administrative expense for products delivered to debtor-in-possession several hours before petition was filed even though debtor-in-possession received payment from its customer from the resale of the chemicals postpetition);

<u>In re Baths Intern., Inc.</u>, 31 B.R. 143 (S.D.N.Y. 1983)(affirming denial by bankruptcy court of administrative expense priority in Chapter 11 case to fees claimed by advertising agency for placing advertisements in directories for debtor prepetition even though advertisements were not published until after the debtor-in-possession filed its bankruptcy petition);

<u>In re Southwest Florida Heart Group, P.A.</u>, 343 B.R. 332 (Bankr. M.D. Fla. 2006)(company that Chapter 11 debtor retained prepetition to collect its accounts receivable after ceasing operations, and postpetition, with court approval, for same purpose, could not recover, as administrative expense, compensation for any collection services that it rendered prepetition, even though those prepetition services resulted in the debtor-in-possession's receipt of $935,000 in the month immediately following the date bankruptcy case was filed);

<u>In re WorldCom, Inc.</u>, 308 B.R. 157 (Bankr. S.D.N.Y. 2004)(commissions to which debtor-in-possession's sales agent became entitled as a result of payments made to debtor-in-possession postpetition by customers which the agent had secured prepetition were not payable as administrative expenses even though the postpetition payments made by said customers were of substantial benefit to the debtor-in-possession);

<u>In re Pittsburgh-Canfield Corp.</u>, 283 B.R. 231 (Bankr. N.D. Ohio. 2002)(company that supplied natural gas to debtor-in-possession prepetition was not allowed administrative expense claim for the same even though the gas was used by the debtor-in-possession postpetition);

<u>In re Moltech Power Systems, Inc.</u>, 273 B.R. 268 (Bankr. N.D. Fla. 2002)(denying administrative expense priority in Chapter 11 case to claim made by company employed by debtor prepetition to audit its utility bills and obtain refunds and future savings from utility companies, in exchange for a set percentage of such refunds or future savings, for agreed percentage of credit realized by debtor-in-possession as a result of company's prepetition services even though credit was applied by utility company to debtor-in-possession's account postpetition);

<u>In re Section 20 Land Group, Ltd.</u>, 261 B.R. 711 (Bankr. M.D. Fla. 2000)(denying administrative expense priority in Chapter 11 case to fees and expenses incurred prepetition by prospective purchaser's due diligence efforts in connection with

24

prepetition contract entered into with debtor to purchase land even though discovery of title problems by prospective purchaser may have facilitated debtor-in-possession's sale of the property and absent prospective purchaser abandonment of its equitable conversion claim debtor-in-possession may have been unable to obtain confirmation its plan);

In re Russell Cave Co., Inc., 249 B.R. 145 (Bankr. E.D. Ky. 2000)(creditor which supplied custom-made labels to debtor-in-possession postpetition pursuant to prepetition contract was not entitled to be paid for labels as administrative expense);

In re Snowcrest Development Group, Inc., 200 B.R. 473 (Bankr. D. Mass. 1996)(denying administrative expense priority in Chapter 11 case to commission sought by broker which procured purchase and sale agreements for certain real estate prepetition where sales did not close until after the debtor-in-possession filed its bankruptcy petition);

Vanco Trading, Inc. v. Monheit (In re K Chemical Corp.), 188 B.R. 89 (Bankr. D. Conn. 1995)(denying administrative expense priority in Chapter 11 case to supplier of chemical products for products delivered to debtor-in-possession several hours before petition was filed even though debtor-in-possession received payment from its customer from the resale of the chemicals postpetition), aff'd, No. 3:95CV02681 (EBB), 1999 WL 464531 (D. Conn. Jun 17, 1999);

In re HSD Venture, 178 B.R. 831 (Bankr. S.D. Cal. 1995)(commissions due real estate brokers for prepetition efforts which resulted in contracts for sales of debtor-in-possession's condominium units being obtained would not be allowed as administrative expenses pursuant to 503(b)(3)(D) where sales did not close until after bankruptcy petition was filed);

In re 9 Stevens Café, Inc., 161 B.R. 96 (Bankr. S.D.N.Y. 1993)(fees of attorney that represented prospective debtor in prepetition state court action which resulted in a $45,000 settlement and a $100,000 reduction in a mortgage on the debtor's property could not be accorded administrative expense priority pursuant to 503(b)(3)(D) because attorney's services were performed prepetition);

In re Dynacircuits, L.P., 143 B.R. 174 (Bankr. N.D. Ill. 1992)(salesman's claim for commissions on orders placed prepetition by customers obtained by salesman but not paid by customers until after petition was filed was not entitled to administrative expense priority even though debtor-in-possession derived postpetition benefit from salesman's prepetition efforts);

In re Balport Const. Co., Inc., 123 B.R. 174 (Bankr. S.D.N.Y. 1991)(consultant retained by debtor prepetition, and then postpetition pursuant to court order, to

25

substantiate the debtor's damages claim in continuing state court litigation was not entitled to be paid that portion of his fee generated as a result of services rendered prepetition as an administrative expense pursuant to 503(b)(3)(D) even though those services contributed to the debtor-in-possession's negotiation of a substantial postpetition settlement);

In re Philadelphia Mortgage Trust, 117 B.R. 820 (Bankr. E.D. Pa. 1990)(Non-bankruptcy trustee of debtor real estate investment trust was not entitled to reimbursement of litigation expenses it incurred prepetition as administrative expense even though non-bankruptcy trustee's prepetition actions resulted in a postpetition benefit being realized by the debtor-in-possession);

Berliner Handels-Und Frankfurter Bank v. East Texas Steel Facilities, Inc. (In re East Texas Steel Facilities, Inc.), 117 B.R. 235 (Bankr. N.D. Tex. 1990)(denying administrative expense priority in Chapter 11 case to postpetition extension of credit to debtor-in-possession by bank pursuant to prepetition letter of credit agreement);

In re Precision Carwash Corp., 90 B.R. 34 (Bankr. E.D.N.Y. 1988)(denying administrative expense priority in Chapter 11 case to commission sought by broker which acquired purchaser and contract of sale for debtor's wash business and property prepetition even though sale was not consummated until after debtor-in-possession filed its bankruptcy petition);

In re Nevins Ammunition, Inc., 79 B.R. 11 (Bankr. D. Idaho 1987)(creditor was not entitled to administrative expense for two shipments of brass shell casings received by debtor-in-possession prepetition even though casings were ostensibly used by the debtor-in-possession postpetition in the operation of its business);

In re Roberts & Porter, Inc., 54 B.R. 251 (Bankr. Ill. 1985)(employment agency was not entitled to administrative expense for commission due as a result of its referring employee to debtor-in-possession prepetition even though commission did not become due until after the Chapter 11 petition was filed and employee continued to perform valuable services for debtor-in-possession postpetition);

In re The Charter Co., 52 B.R. 267 (Bankr. M.D. Fla.1985)(denying administrative expense priority in Chapter 11 case to commission sought by broker which acquired purchaser and contract of sale for debtor's plant prepetition even though sale was not consummated until after debtor-in-possession filed its bankruptcy petition);

In re John Clay and Co., Inc., 43 B.R. 797 (Bankr. D. Utah 1984)(denying administrative expense priority in Chapter 11 case to claims made by sheep

producers for sheep delivered to debtor prepetition even though sheep were sold by debtor-in-possession postpetition);

Brown v. Traders Nat'l Bank (In re Spears), 39 B.R. 91, 96 (Bankr. E.D. Tenn. 1984)(feed company was not entitled to administrative expense claim for 23 tons of bulk feed sold and delivered to debtor-in-possession farmer before bankruptcy even though the feed was used by the debtor-in-possession postpetition);

Benn v. Halyard Realty Trust (In re Halyard Realty Trust), 37 B.R. 260 (Bankr. D. Mass. 1983)(commission earned by real estate agent prepetition as a result of his acquiring purchaser for property owned by debtor-in-possession was not compensable as administrative expense even though sale brokered by agent closed postpetition);

Bojalad & Co. v. Holiday Meat Packing Inc. (In re Holiday Meat Packing Inc.), 30 B.R. 737 (Bankr. W.D. Pa. 1983)(creditor was not entitled to administrative expense claim for $27,450 sale price of beef that it delivered to the debtor-in-possession for use in the continuation of its business two-and-a-half hours the filing of its Chapter 11 petition);

In re Baths Intern., Inc., 25 B.R. 538 (Bankr. S.D.N.Y. 1982)(advertising agency was not entitled to administrative expense for fees for placing advertisements in directories for debtor prepetition even though advertisements were not published until after the debtor-in-possession filed its bankruptcy petition);

In re World Fashions, Inc., 24 B.R. 452 (Bankr. N.D. Ga. 1982)(creditor which delivered merchandise to debtor-in-possession three days before the Chapter 11 petition was filed was not entitled to administrative expense for purchase price of merchandise even though merchandise was ostensibly used by debtor-in-possession in operation of its business).

These decisions were reached in Chapter 11 cases. Not only do they not support AmSouth's general propositions that prepetition fees and costs may be accorded administrative expense priority, they were based on section 503(b)(3)D), a specific statutory authorization explicitly limited to "substantial contributions" made in Chapter 11 cases. As the discussion below explains, that doctrine is not available in Chapter 7 cases. Therefore, the above cases do not support either the general proposition advanced by AmSouth or its contention that a creditor's prepetition professional fees and costs incurred in making a "substantial contribution" in a Chapter 7 case may be accorded administrative expense priority, "either as a nonlisted 'actual, necessary' expense of preserving the estate under 503(b)(1)(A) or as a nonlisted administrative expense under 503(b) in general," N.P. Mining Co., 963 F.2d at 1452. Id. First, as cited above, the Court of Appeals for the Eleventh Circuit has declared that 503(b) was intended to accommodate postpetition "nonlisted" administrative expenses.

27

Second, as cited above, by AmSouth's own admission, section 503(b)(3)(D) does not apply to Chapter 7 cases.

Based on the above, the Court finds that the cases cited by AmSouth are distinguishable, are not persuasive, and are not on point. In addition, the Court finds that the cases that rely on section 503(b)(3)(D) are not applicable. They are not Chapter 7 cases. So the question then becomes, can "substantial continuation" ever exist in Chapter 7 cases.

## C. "Substantial contribution" in Chapter 7 cases

AmSouth argues it made a "substantial contribution" in this case and should be rewarded for it. Is that doctrine something that this Court should recognize in this Chapter 7 case? The answer is no.

Admittedly, a few courts appear to recognized an unwritten administrative expense for "substantial contribution" in Chapter 7 cases for services rendered to and costs incurred by creditors. In re Pappas, 277 B.R. 171 (Bankr. E.D.N.Y. 2002); In re Zedda, 169 B.R. 605 (Bankr. E.D. La. 1994); In re Rumpza, 54 B.R. 107 (Bankr. S.D. 1985). But, those cases involved requests by creditors for postpetition services and costs. Therefore, they do not support the position that this Court must accept, if it were to grant AmSouth's present request. And to the contrary, the majority of courts addressing the issue have concluded that administrative expense priority may not be accorded to expenses incurred by a creditor in making a "substantial contribution" in a Chapter 7 case regardless of when those expenses were incurred. United States Trustee v. Farm Credit Bank of Omaha (In re Peterson), 152 B.R. 612, 613-614 (D.S.D. 1993); In re Beck Rumbaugh Associates, Inc., 84 B.R. 369, 371 (E.D. Pa. 1988); Xifaras v. Morad (In re Morad), 328 B.R. 264, 272-273 (BAP 1st Cir. 2005); In re United Container LLC, 305 B.R. 120, 128 (Bankr. M.D. Fla. 2003); In re Blount, 276 B.R. 753, 763-764 (Bankr. M.D. La. 2002); In re Conty, 205 B.R. 329, 332 (Bankr. M.D. Fla. 1996); In re Alumni Hotel Corp., 203 B.R. 624, 631 (Bankr. E.D. Mich. 1996); In re Beck-Rumbaugh Associates, Inc., 68 B.R. 882, 886 (Bankr. E.D. Pa. 1987), aff'd, 84 B.R. 369 (E.D. Pa. 1988).

Based on the majority view, this Court finds that it would be unreasonable to apply a section 503(b)(3)(D) analysis to Chapter 7 and create an administrative expense category in Chapter 7 cases based on "substantial contribution." Congress knew how to create a "substantial contribution" administrative expense for cases it believed were appropriate for that benefit. It did that in section 503(b)(3)(D) for Chapter 9 and Chapter 11 cases. It could have done the same in Chapter 7 cases. It did not. As Justice Harry A. Blackmun wrote for the Court in Russello v. United States, 464 U.S. 16, 23 (1983), "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" Id. at 23 (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972). To

paraphrase that quotation in the context of the current case, "Had Congress intended to [accord administrative expense priority to the fees and expenses incurred by a creditor in making a substantial contribution in a Chapter 7 case], it presumably would have done so expressly as it did [for Chapter 9 and Chapter 11 cases in section 503(b)(3)(D)]." Id. The cases discussed below support this conclusion.

The district court in United States Trustee v. Farm Credit Bank of Omaha (In re Peterson), 152 B.R. 612 (D.S.D. 1993) denied administrative expense priority in a Chapter 12 case for fees and expenses incurred by a creditor in opposing the debtors discharge, even though those efforts resulted in the debtor agreeing to pay the trustee $19,000. The opinion there reads in part:

> Section 503(b) provides that the allowance for administrative expenses includes expenses related to specific activities. The Bankruptcy Code's Rules of Construction expressly states that the words " 'includes' and 'including' are not limiting". 11 U.S.C. § 102(3). Based on this language, the Court agrees that the specified activities listed under § 503(b) are not the only activities which may qualify as compensable administrative expenses.

> Section 503(b)(3)(D) states that among the expenses which may be recovered are those incurred by "a creditor, ... in making a substantial contribution in a case under Chapter 9 or 11 of this title". However, there is no provision in § 503 for the recovery of expenses incurred by a creditor in a bankruptcy case under Chapter 7, 12, or 13.

> In the absence of § 503(b)(3)(D) the Court might be persuaded that a creditor who performs the activities undertaken by FCBO in this matter would be entitled to compensation for those efforts on the basis that the use of the word "including" in § 503(b) is not limiting. But the presence of subsection (3)(D) to § 503(b) casts an entirely different light on the analysis of the statute.

> While Chapter 12 had not yet been drafted or considered by Congress when the original version of § 503(b)(3)(D) was promulgated, Chapters 7 and 13 were in existence at that time and Congress expressly chose not to include those Chapters in § 503(b)(3)(D). Although the parties speculate as to the reasons why Congress did not include the other bankruptcy chapters in § 503(b)(3)(D), the Court is not going to engage in speculation and attempt to divine congressional wisdom. For whatever reason, Congress chose not to include reference to those other chapters in § 503(b)(3)(D).

> The ruling of the bankruptcy court in this case has effectively rewritten § 503(b)(3)(D) to include Chapter 12. While this may be an

equitable result based on the efforts of FCBO in this case, the Supreme Court has explicitly stated "that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."  Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988).  The authority to address any inequities which may be present in the application of the plain meaning rule to § 503(b) is vested in Congress, not the courts.  Taylor v. Freeland & Kronz, 503 U.S. 638, ----, 112 S.Ct. 1644, 1649, 118 L.Ed.2d 280 (1992).

Moreover, the bankruptcy court's ruling would render subsection (3)(D) of § 503(b) meaningless.  As the United States Trustee points out, if a creditor who makes a substantial contribution in a Chapter 12 proceeding is entitled to compensation for its expenses under § 503(b), the phrase "in a case under Chapter 9 or 11 of this title" in subsection (3)(D) would be merely excess verbiage.  It is a well established tenet of statutory construction that a statute will not be interpreted so as to render other provisions of the same enactment superfluous.  Freytag v. Comm'r, 501 U.S. 868, ----, 111 S.Ct. 2631, 2638, 115 L.Ed.2d 764 (1991); Conway County Farmers Ass'n v. United States, 588 F.2d 592, 598 (8th Cir.1978).

152 B.R. at 613-614 (footnotes omitted).

The court in In re Conty, 205 B.R. 329 (Bankr. M.D. Fla. 1996) denied administrative expense priority to professional fees incurred by a creditor whose efforts were instrumental in recovering funds for a Chapter 7 case.  The opinion there reads in part:

Even though, Presutti's action were instrumental in the estate's recovery of funds from the writ first obtained by Presutti prepetition, Presutti fails to meet the requirements set forth in § 503(b)(3)(B).

Section 503(b)(4) states that there may be reasonable compensation for professional services rendered by an attorney or accountant.  Reimbursement under this subsection is contingent upon the applicant's first obtaining approval from the Court for action taken in the bankruptcy proceeding.  Presutti's action in state court for the writ of garnishment was prepetition and therefore not reimbursable under § 503.  His objection to the Debtor's claim of the funds as exempt was not made with Court permission.  The mere benefit to the estate is insufficient grounds for reimbursement under § 503.

When the language of the statute is plain, the inquiry ends with the language of the statute.  Section 503 provides for the allowance of

30

administrative expenses in certain situations.  The Bankruptcy Code's Rules of Construction expressly states that the words "includes" and "including" are not limiting.  11 U.S.C. § 102(3).  Section 503 is not necessarily exhaustive, but rather illustrative.  Judicial construction may permit other claims to be reasonably demonstrated "actual, necessary" costs of administration;  however, there is no provision in § 503 for the recovery of expenses incurred specifically by a creditor in a bankruptcy case under Chapter 7, 12, or 13.

Section 503 priorities should be narrowly construed to maximize the value to the estate and the benefit to all creditors.  The Court must strike a balance between these two goals.  The presence of § 503(b)(3)(D) allowing such expenses under Chapter 9 or 11 illustrates that Congress expressly chose not to include those other chapters in § 503.  A determination by the Court that Chapter 7 was included in § 503(b)(3)(B) would render it meaningless.  Any inequities may be addressed by Congress and not the courts.

205 B.R. at 332 (citations omitted).

The court in In re Blount, 276 B.R. 753 (Bankr. M.D. La. 2002) denied administrative expense priority to fees claimed by attorneys representing a creditor who discovered a personal injury lawsuit not listed by the debtor on his petition, even though that lawsuit ultimately resulted in a substantial settlement for the Chapter 7 trustee. The opinion there reads in part:

The Court poses as an argument on behalf of Whitney, that § 503(b) is illustrative, and therefore, that failure to procure derivative standing is not fatal to counsel for Whitney's claim for attorney's fees. Certainly, Whitney contributed to the collection of the money by the Trustee.   Whitney's contribution can easily be termed "substantial." However, making a substantial contribution to a case is grounds for reimbursement of expenses to a creditor only when the case is a case under chapter 9 or 11 of the Bankruptcy Code.  As § 503(b)(3)(D) is expressly limited to cases under chapters 9 or 11 of the Bankruptcy Code, and this case is a case under chapter 7 of the Bankruptcy Code, the substantial contribution ground of recovering expense reimbursement does not apply.  Thus, counsel for Whitney cannot bootstrap his claim for attorney's fees onto a claim for "substantial contribution" under § 503(b)(3)(D).

Certainly the list in § 503(b) is illustrative, but the language of the specifically enumerated provisions establishes that certain possible avenues for reimbursement are precluded by those that are included.   To expand the situations expressly covered by the Section to include

31

expense reimbursement under circumstances failing to meet the requirements of those explicitly stated situations would effectively contradict the conditions of expense recovery which are expressly stated. The two possible provisions under which Whitney could be entitled to expense recovery are: 1) reimbursement for a creditor's expenses for making a substantial contribution to a chapter 7 case, and; 2) reimbursement of expenses for a creditor that recovers property without the grant of derivative standing from the Court.  Section 503(b)(3)(D) precludes the first because of its inapplicability to chapter 7 cases, and the inability to ever assert a claim for recovery of property transferred or concealed without a grant of derivative standing under § 503(b)(3)(B), not to mention the failure to actually recover the property, precludes the second.

276 B.R. at 763-764 (footnotes omitted).

At the bankruptcy level in <u>Xifaras v. Morad (In re Morad)</u>, 328 B.R. 264 (BAP 1st Cir. 2005), in a Chapter 7 case converted from Chapter 11, the court denied a creditor's request under section 503(b)(3)(D) for administrative expense priority for attorneys fees and litigation costs.  Those fees and costs were incurred prepetition in obtaining a judgment setting aside fraudulent transfers of property made by the debtor to family members.  The result of the fraudulent transfer action was that the property became part of the debtor's bankruptcy estate.

Even though the creditor's actions plainly benefitted the Chapter 7 bankruptcy estate, the Bankruptcy Appellate Panel of the First Circuit affirmed the bankruptcy court's denial.  The appellate court recognized that section 503(b)(3)(D) bestows administrative expense priority on services and costs incurred by a creditor in making a substantial contribution only during a Chapter 11 case, not prior to the institution of the case or after its conversion to Chapter 7.  The opinion there reads in part:

> The record amply supports the conclusion of the bankruptcy court that the estate received benefit from Xifaras' many efforts.   Before bankruptcy she obtained a judgment setting aside fraudulent conveyances.  After a chapter 11 was commenced in Florida she was successful in converting the case to chapter 7 and changing venue to Massachusetts.  Moreover, it is of no consequence that Xifaras may have accomplished these things to advance her own cause in collecting a large judgment.  <u>See</u> <u>Celotex</u>, 227 F.3d at 1339 ("To impose an altruism requirement on the ability to obtain administrative expenses under § 503(b)(3)-(4) would effectively render the section meaningless as to creditors"); <u>In re Pow Wow River Campground, Inc.</u>, 296 B.R. 81, 85 (Bankr. D.N.H. 2003)(citing <u>Oxford Homes</u>, 204 B.R. at 268 n. 16). Unfortunately for Xifaras, however, the record does not support that she made a substantial contribution during the short time the case was in chapter 11.

Case 04-06193-BGC7     Doc 347     Filed 09/28/06     Entered 09/28/06 11:40:22     Desc Main
Document      Page 32 of 39

The case was commenced in Florida as a chapter 11 on January 23, 2002. It was converted to chapter 7 three months later on Xifaras' motion. There is nothing in the record before us to support Xifaras' contentions that, in addition to challenging venue, she filed numerous motions challenging the debtors schedules, his exemptions, and his "bad faith" filing of the bankruptcy petition. Thus, we have no basis upon which to review for clear error the bankruptcy judge's finding that, "Xifaras has not met her burden of establishing a 'substantial contribution' during the period between the filing of the Chapter 11 petition and the conversion to Chapter 7, as the contributions made during this period neither enhanced the progress of the reorganization nor contributed to the resolution of the Chapter 11 case."

Her activities before the bankruptcy case was commenced, namely, the successful fraudulent conveyance action, and after it was converted to chapter 7, primarily, the change in venue to Massachusetts, do not qualify under § 503(b)(3)(D). See Lebron, 27 F.3d at 945. As the Lebron court stated, "[t]here are provisions of § 503 other than subsection (b)(3)(D) that authorize reimbursement of expenses incurred in connection with a chapter 7 proceeding, and post-conversion expenses were intended to be reimbursable under those provisions or not at all." Id. (citing § 503(b)(3)(B) and (C)).

328 B.R. at 272-273 (footnotes omitted).

As these opinions demonstrate, cases decided under section 503(b)(3)(D) do not provide any authority, either directly or by analogy, for the proposition that administrative expense priority may be accorded expenses incurred by a creditor in making a "substantial contribution" in a Chapter 7 case. Similarly, it appears that most would not support AmSouth's general theory for the additional reason that those cases reject the proposition that prepetition expenses may be accorded administrative expense priority. Furthermore, the existence of 503(b)(3)(D) precludes recognition of an unlisted administrative expense for "substantial contributions" made by creditors in Chapter 7 cases.

The court's statement in In re Elder, 321 B.R. 820 (Bankr. E.D. Va. 2005) is an appropriate summary. That court wrote, "when a subsection directly addresses the type of administrative expense sought, the restrictions in it cannot be avoided by appealing to the non-exclusive nature of § 503(b)." Id. at. 829.

Based on the above, this Court must conclude that if Congress intended for there to be a "substantial contribution" administrative expense in Chapter 7 cases, Congress would not have limited 503(b)(3)(D) to cases under Chapter 9 and Chapter 11. And its limitation in section 503(b)(3)(D) to cases under Chapter 9 and Chapter 11

Case 04-06193-BGC7    Doc 347    Filed 09/28/06    Entered 09/28/06 11:40:22    Desc Main
Document    Page 33 of 39

is a clear indication that it did not intend such an administrative expense to be allowed in Chapter 7 cases.

Based on the above, the Court finds that "substantial contribution" cannot exist in Chapter 7 cases.

### D.  Section 503(b)(3)(B) does not provide any basis for granting AmSouth's administrative expense request.

Section 503(b)(3)(B) of the Bankruptcy Code, (which is applicable to Chapter 7 cases), provides that administrative expense priority may be accorded to actual, necessary expenses of, "a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor...."  11 U.S.C. § 503(b)(3)(B).

Section 503(b)(4), also applicable to Chapter 7 cases, authorizes an administrative expense for the reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expenses are allowable as an administrative expense pursuant to 503(b)(3)(B).

Initially, AmSouth did not invoke either subsection 503(b)(3)(B) or subsection 503(b)(4) in its Motion of AmSouth Bank for Award of Administrative Priority on that Portion of its Claim Related to Fraudulent Conveyance Litigation Expenses.  And it did not cite either of those code sections as a basis for its administrative expense request in its Statement of Issue filed later.  In fact, AmSouth appears to have conceded, in its Reply of AmSouth Bank to Objections of Avalon Finance, LLC to Motion of AmSouth Bank for Award of Administrative Priority that sections 503(b)(3)(B) and 503(b)(4) are inapplicable to its request.  Id. at 4.  In that document, AmSouth contended that a case cited by Avalon, namely Xiasfras v. Morad (In re Morad), 328 B.R. 264 (BAP 1st Cir. 2005) is inapposite to its position because it was based on sections 503(b)(3)(B) and 503(b)(4) rather than, like its request, on an unlisted section 503(a) administrative expense.

But, in its Supplemental Brief of AmSouth Bank in Support of Motion for Administrative Priority, AmSouth changed its position, or at least raised an alternative position.  It pled:

> To the extent that the Court desires to employ the nunc pro tunc authority exercised in the case of the retroactive retention of Burr & Forman, the Court could enter a nunc pro tunc order effectively bringing the Bank's Adversary Proceeding within the provisions of § 503(b)(3)(B) since it was the Bank's Adversary Proceeding that was settled by the Trustee.

Id. at 2-3.

AmSouth's cites <u>In re Antar</u>, 122 B.R. 788 (Bankr. S.D. Fla. 1990) and <u>In re George</u>, 23 B.R. 686 (Bankr. S.D. Fla. 1982) to support that last contention. But, neither of those cases involved a request for compensation for <u>prepetition</u> services, or a request for reimbursement of <u>prepetition</u> expenses, or the allowance of administrative expense priority to either <u>prepetition</u> services or <u>prepetition</u> expenses. Therefore, neither would support the proposition that administrative expense priority may be accorded to professional fees and litigation expenses incurred by a creditor, whether through sections 503(b)(3)(B) and 503(b)(4), or for any other reason.

The fact is, AmSouth has not cited <u>any</u> reported case in support of its application which has accorded administrative expense priority in a Chapter 7 case to professional fees and litigation expenses incurred by a creditor <u>prepetition</u>. The reason is probably because courts uniformly hold that administrative expense priority may not be accorded to a creditor's prepetition fees and expenses in Chapter 7 cases.

Some of those courts include:

<u>Xifaras v. Morad (In re Morad)</u>, 328 B.R. 264 (BAP 1st Cir. 2005)(affirming bankruptcy court's denial in Chapter 7 case of administrative expense priority to attorneys fees and litigation costs incurred by a creditor in obtaining, prior to bankruptcy, a judgment setting aside fraudulent transfers of property made by the debtor to family members even though creditor's efforts resulted in property becoming part of the debtor's bankruptcy estate);

<u>In re Interstate Grocery Distributions System, Inc.</u>, 267 B.R. 907 (Bankr. D.N.J. 2001)(denying administrative expense priority in Chapter 7 case to cost of improvements made prepetition to real property by prospective purchaser who had entered into prepetition contract to purchase real estate from debtor);

<u>In re Conty</u>, 205 B.R. 329 (Bankr. M.D. Fla. 1996)(denying administrative expense priority in Chapter 7 case to professional fees incurred by a creditor whose prepetition efforts in filing and prosecuting writ of garnishment ultimately resulted in realization by estate of its sole asset;

<u>Sibarium v. Karp, Leonetti & Co. (In re New England Software, Inc.</u>, 204 B.R. 334 (Bankr. D. Conn. 1996)(denying administrative expense priority in Chapter 7 case to accounting firm's claim for services rendered in preparing debtor's prepetition taxes);

<u>In re Olympic Marine Services, Inc.</u>, 186 B.R. 651 (Bankr. E.D. Va. 1995)(denying administrative expense priority in Chapter 7 case to fees requested for services rendered prepetition by attorneys who represented the debtor prepetition and the trustee postpetition in pursuing a lawsuit which was ultimately settled for $518,927.71);

35

<u>In re Williams</u>, 165 B.R. 840 (Bankr. M.D. Tenn. 1993)(denying administrative expense priority in Chapter 7 case to fees for prepetition services rendered by attorney who represented purchaser in bulk purchase transfer of debtor's business even though sales proceeds became part of the bankruptcy estate);

<u>In re I.D. Craig Service Corp.</u>, No. 89-00640, 1990 WL 53050 (Bankr. W.D. Pa. April 23, 1990)(denying administrative expense priority in Chapter 7 case to fees requested for services rendered prepetition by attorneys in class action which precipitated the debtor's bankruptcy filing);

<u>Jones v. State Bank of Arthur (In re Jones)</u>, 98 B.R. 399 (Bankr. C.D. Ill. 1988)(denying administrative expense priority in Chapter 7 case to commission claimed by real estate broker when broker acquired purchaser for property prepetition but sale did not close until after petition was filed);

<u>In re Moskovic</u>, 77 B.R. 421 (Bankr. S.D.N.Y. 1987)(denying administrative expense priority to the claim of a real estate broker in a Chapter 7 case even though the broker had obtained, prepetition, a purchaser for certain real estate owned by the debtor, as well as an executed contract for sale, and the sale closed postpetition, resulting in substantial benefit to the bankruptcy estate);

<u>In re Pierce</u>, 53 B.R. 825 (Bankr. D. Minn. 1985)(denying administrative expense priority in Chapter 7 case to fees requested for services rendered prepetition by attorneys for non-debtor third parties in connection with lawsuit which resulted in realization by estate of $45,878.00).

Moreover, <u>Antar</u> and <u>George</u>, as well as <u>Zedda</u>, (another case cited by AmSouth), are in the minority to the extent that they purport to permit <u>nunc pro tunc</u> authorization under 503(b)(3)(B).  The majority of courts considering that issue and reporting decisions have determined that the prerequisite authorization needed to satisfy 503(b)(3)(B) may not be supplied <u>nunc pro tunc</u> because that operation would denigrate, and render meaningless, the statute's explicit requirement that prior approval of the court should be obtained before a creditor engages in any efforts to recover property transferred by the debtor.  <u>In re Gimelson</u>, No. 04-3216, 00-11773F, 2004 WL 2713059, *21 (E.D. Pa. Nov. 23, 2004); <u>In re Elder</u>, 321 B.R. 820, 829 (Bankr. E.D. Va. 2005); <u>In re Central Idaho Forest Products</u>, 317 B.R. 150, 157 (Bankr. D. Idaho 2004); <u>Sanner v. Poli (In re Poli)</u>, 298 B.R. 557, 568-569 (Bankr. E.D. Va. 2003); <u>In re Lagasse</u>, 228 B.R. 223, 225 (Bankr. E.D. Ark. 1998); <u>In re Conty</u>, 205 B.R. 329, 331-332 (Bankr. M.D. Fla. 1996); <u>In re Fall</u>, 93 B.R. 1003, 1012 (Bankr. D. Or. 1988); <u>In re Monahan</u>, 73 B.R. 543, 544 (Bankr. S.D. Fla. 1987); <u>In re Romano</u>, 52 B.R. 590, 593 (Bankr. M.D. Fla. 1985); <u>In re Spencer</u>, 35 B.R. 280, 281-282 (Bankr. N.D. Ga. 1983); <u>Lazar v. Casale (In re Casale)</u>, 27 B.R. 69, 70-71 (Bankr. E.D.N.Y. 1983).

But, for the sake of argument, what if the prerequisite authorization needed to satisfy 503(b)(3)(B) might be supplied <u>nunc pro tunc</u>?  And if it could, what authority

Case 04-06193-BGC7    Doc 347    Filed 09/28/06    Entered 09/28/06 11:40:22    Desc Main
Document      Page 36 of 39

would this Court have had to allow it?  Whatever nunc pro tunc authority this Court
could exercise would not extend to services rendered and expenses incurred prior to
the time this Court obtained jurisdiction to authorize anything in connection with this
bankruptcy case.  The court in In re Moskovic, 77 B.R. 421 (Bankr. S.D.N.Y. 1987)
explains.  In Moskovic the court denied administrative expense priority to the claim of a
real estate broker in a Chapter 7 case where the broker obtained a prepetition
purchaser for certain real estate owned by the debtor and closed the sale postpetition.
There was a substantial benefit to the bankruptcy estate.  That court wrote:

> The real estate broker is a prepetition creditor holding a general
> unsecured claim against this estate and does not have an administration
> expense priority claim which would justify the brokerage commissions
> being paid directly from the proceeds of the sale.
>
> The debtor argues that the broker conferred a benefit upon this
> estate and that the broker's services should now be authorized nunc pro
> tunc.
>
> The brokerage agreement may not be approved nunc pro tunc for
> the reason that when the broker was retained by the debtor and his wife,
> the debtor had not yet filed his Chapter 7 petition.  Accordingly, the court
> did not yet have jurisdiction of this case.  When the debtor did file his
> Chapter 7 petition on July 12, 1986, the broker had already earned the
> claimed brokerage commissions because a ready, willing and able
> purchaser had been obtained.  The brokerage contract was no longer
> executory because the broker then had a general unsecured claim for
> brokerage commissions.  A nunc pro tunc approval of the brokerage
> contract would simply elevate an unsecured general claim to the status of
> an administration priority expense without any further benefit to the estate.
> The broker had already performed the brokerage services for the debtor
> and his wife before the Chapter 7 petition was filed.

77 B.R. at 423.

And again, the opinion in Xifaras v. Morad (In re Morad), 328 B.R. 264 (BAP 1st
Cir. 2005) is helpful.  As discussed above, in this case the Bankruptcy Appellate Panel
of the First Circuit affirmed the bankruptcy court's denial of an administrative expense
priority requested pursuant to 503(b)(3)(B).  The appellate court based its decision on
the grounds that the fees and costs had been rendered and incurred prior to the filing of
the bankruptcy petition, thus making nunc pro tunc approval of the creditor's efforts
impossible.  The court explained:

> Xifaras has made no showing of extraordinary circumstances
> [necessary for nunc pro tunc approval]; indeed, no such showing is
> possible in this case.  The fraudulent conveyances action was

commenced in 1997. It was a <u>fait accompli</u> by the time the bankruptcy case was commenced in 2002. At that point bankruptcy court oversight was impossible. The services for which compensation and reimbursement are sought are, if anything, part of Xifaras' pre-bankruptcy claim. The value received by the estate from those services cannot change that fact. For these reasons there is no error in the bankruptcy court's failure to grant <u>post facto</u> approval under 503(b)(3)(B).

328 B.R. at 272 (parenthetical added).

The result must be the same here. AmSouth could not have obtained approval from the Court before engaging in its efforts to recover the property transferred or concealed by the debtor, and cannot be accorded such approval <u>nunc pro tunc</u>, since its efforts were completed prior to the time this Court acquired the power to grant that approval.

In summary, the bulk of reported authority: (1) does not allow prepetition services, expenses, or debt incurred or provided by a creditor to be accorded administrative expense priority in Chapter 7 cases; (2) requires that a creditor actually obtain prior approval before engaging in efforts which may be compensated or reimbursed under 503(b)(3)(B); and (3) disapproves of the view that the requisite approval may be provided.

Based on the above, the Court finds that section 503(b)(3)(B) does not provide any basis for granting AmSouth's administrative expense request.

## VI.  Conclusion

Based on the above, this Court concludes that AmSouth's request is due to be denied because: (A) prepetition services cannot support a claim for administrative expense priority; (B) the cases AmSouth cites are distinguishable, are not persuasive, or are not on point, and the cases that rely on section 503(b)(3)(D) are not applicable; (C) "substantial contribution" does not exist in Chapter 7 cases; and (D) section 503(b)(3)(B) does not provide any basis for granting AmSouth's administrative expense request.

This Court's initial question was: Are fees and expenses incurred by a creditor in a prepetition prosecution of claims against the then non-debtor entitled to administrative expense priority after that non-debtor files a Chapter 7 bankruptcy case? The answer is, no.

## VII.  Order

Based on the above, it is **ORDERED, ADJUDGED AND DECREED**:

38

1. The <u>Motion of AmSouth Bank for Award of Administrative Priority on that Portion of its Claim Related to Fraudulent Conveyance Litigation Expenses</u> filed on November 15, 2005, by AmSouth Bank is **DENIED**;

2. The <u>Objection Of Avalon Finance, LLC To Motion Of AmSouth Bank For Award Of Administrative Priority</u> filed on December 9, 2005, by Benjamin A. Bornstein is **SUSTAINED**;

3. The <u>Objection To Motion Of AmSouth Bank For Award Of Administrative Priority</u> filed on December 9, 2005, by Harold Ridgeway and Harry McDowell, Parties In Interest is **SUSTAINED**; and

4. This order is a written opinion for purposes of the E-Government Act, Pub. L. No. 107-347, and shall be docketed as a Memorandum Opinion and Order.

Dated:  September 28, 2006          /s/Benjamin Cohen_____
                                    BENJAMIN COHEN
                                    United States Bankruptcy Judge


BGC:sm

cc:   Debtor
      Mr. Max Pope, Chapter 7 trustee
      Mr. Dave Evans, attorney
      Mr. William Dennis Schilling, attorney
      Mr. Benjamin A. Bornstein, attorney
      Ms. Christie Dowling, attorney
      Mr. Daniel Sparks, attorney
      Mr. Jay Clark, attorney
      Mr. Charles R. Johanson, III, attorney
      Mr. Jon Dudeck, attorney

Case 04-06193-BGC7   Doc 347   Filed 09/28/06   Entered 09/28/06 11:40:22   Desc Main
Document      Page 39 of 39